IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Steven Louis Barnes, | ) |
|                        Plaintiff, | ) Civil Action No. 5:11-01156-MBS |
| vs. | ) **ORDER AND OPINION** |
| Attorney Gregory William Seigler;<br>Lt. Mark Howard, | ) |
|                        Defendants. | ) |

On or about March 3, 2011, Steven Louis Barnes ("Plaintiff"), an inmate in custody of the South Carolina Department of Corrections ("SCDC") at the Lieber Correctional Institution in Ridgeville, South Carolina, filed this pro se action in the Court of Common Pleas for McCormick County, South Carolina. ECF No. 1-1 at 5. Plaintiff's claims arise out of his being convicted of throwing bodily fluids upon an officer at the Edgefield County Detention Center ("ECDC") in Edgefield, South Carolina. Plaintiff asserted a claim for fraudulent concealment against Lieutenant Mark Howard ("Defendant") of the ECDC. *Id.* at 6-15. Plaintiff also asserted claims for professional negligence and "fraud via breach of fiduciary duty" against his Attorney, Gregory William Seigler. *Id.* On April 8, 2011, Plaintiff filed an amended complaint asserting federal claims under 42 U.S.C. § 1983 against Defendant based on denial of access to the courts and "due process violation via government interference in Plaintiff['s] defense at trial" and state law claims for gross negligence and spoliation of evidence. *Id.* at 32-39. On May 13, 2011, Defendant removed the case to district court. *Id.* at 1. In accordance with 28 U.S.C. § 636(b)

5:11-cv-01156-MBS     Date Filed 09/27/12    Entry Number 127     Page 2 of 14

and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III and reassigned to Magistrate Judge Kaymani D. West for pretrial handling.

On August 31, 2011, the Magistrate Judge issued a scheduling order requiring that discovery be completed by October 31, 2011, and that dispositive motions be filed by December 12, 2011. ECF No. 22. On September 1, 2011, Defendant filed a motion for summary judgment. ECF No. 28. By order filed September 2, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately.

Plaintiff filed a motion for a continuance on October 5, 2011, ECF No. 43; a motion to take deposition on October 19, 2011, ECF No. 47; a motion to extend discovery on October 31, 2011, ECF No. 54. Defendant filed a motion for a protective order on December 13, 2011, requesting that discovery be stayed pending resolution of the summary judgment motion. ECF No. 66. In a May 2, 2012 order that this court affirmed, the Magistrate Judge denied all of Plaintiff's above motions and granted Defendant's motion for a protective order. ECF No. 94. In affirming the Magistrate Judge's order, this court explained that the decision to permit summary judgment in advance of discovery was appropriate because the basis of the summary judgment motion is qualified immunity and other legal grounds that do not depend on the sufficiency of the evidence. ECF No. 115.

While the discovery motions were pending, Plaintiff's claims against his attorney were dismissed without prejudice on January 30, 2012. ECF No. 73. At the conclusion of the discovery issues, Plaintiff filed a response in opposition to Defendant's summary judgment motion on June 11, 2012. ECF No. 113. On August 1, 2012, the Magistrate Judge issued a

2

Report and Recommendation recommending that Defendant's motion for summary judgment be granted. ECF No. 117. Plaintiff filed objections to the Report and Recommendation on August 20, 2012. ECF No. 119.

On September 24, 2012, Plaintiff filed a motion to amend his complaint to include a fraud count against his attorney and a motion for a declaratory judgment. ECF No. 124 & 125. On September 26, 2012, Defendant responded to Plaintiff's motion to amend. ECF No. 126.

This matter is before the court on Defendant's motion for summary judgment and Plaintiff's motions to amend and for a declaratory judgment. For the reasons that follow, the court grants Defendant's motion for summary judgment and denies Plaintiff's motions to amend and for a declaratory judgment.

**BACKGROUND**

Plaintiff's claims arise out of an incident that took placed at ECDC on November 3, 2007, that resulted in his criminal conviction for throwing bodily fluids on an officer.[1] In their effort to restrain Plaintiff, the officers at the scene twice used their tasers. On January 2, 2008, Plaintiff filed a lawsuit that in part sought relief under 28 U.S.C. § 1983, alleging that the officers' use of force was excessive. The specific facts of the incident are recounted in the Magistrate Judge's Report and Recommendation recommending that summary judgment be granted, which this court adopted on September 29, 2009. *See Barnes v. Dedmondt*, C/A No. 4:08-0002-MBS, 2009 WL 3166576 (D.S.C. Sept. 29, 2009) ("*Barnes I*"). The Magistrate Judge stated:

---

[2] Although Plaintiff denies that the criminal act took place, because he has been convicted by a jury beyond a reasonable doubt, he cannot now dispute that fact. *United States v. Wight*, 839 F.2d 193, 196 (4th Cir.1987) (applying the doctrine of collateral estoppel to issues litigated in a criminal case to a subsequent civil proceeding).

3

> On November 3, 2007, Defendant Smith, a jailer at ECDC, went to Barnes's cell to give him some medications. Because of Barnes's prior history of violence and past incidents of throwing bodily fluids on corrections officers as well as on the food cart, Smith was accompanied by two deputies of the Edgefield County Sheriff's Department, Defendants Dedmondt and Williams. As he approached the flap in Barnes's cell door to pass the medications to Barnes, Smith asked Barnes if he was going to behave, or if he was going to throw something on Smith. Barnes replied that he was not going to throw anything. Smith then administered Barnes his medication. When Smith leaned down to collect the medication cup from Barnes, Barnes threw a cup of urine at Smith through the flap. Officer Dedmondt then instructed Smith to open the door so that they could remove Barnes from his cell and clear it of any other contraband.
>
> According to the defendants, Barnes refused to cooperate and refused to follow instructions so that the officers could restrain him while they cleared his cell. Rather, Barnes held his hands in the air and approached Dedmondt. Accordingly, Dedmondt used his taser on Barnes. When Barnes still did not follow the officers' instructions, Dedmondt "tased" Barnes again. Because of Barnes's persistent resistance, Dedmondt was unsure whether both prongs of the taser had made contact with Barnes such that he would feel the electric current from the taser; accordingly, Dedmondt administered a "contact stun" with the taser, applying it directly to Barnes's ankle. Barnes was then subdued and forcibly dragged from his cell.

*Id.* at *8* (citations omitted).

In this case, Plaintiff alleges that he was denied access to the courts when he litigated *Barnes I*. Plaintiff avers that Defendant, who is responsible for maintaining the tasers at the Edgefield County Sheriff's Office, altered the videotape footage of the incident. ECF No. 1 at 32. Plaintiff asserts that on February 21, 2008, in the company of criminal defense counsel, he viewed the videotape footage for the first time and noticed it had been altered. ECF No. 1-1 at 6. According to Defendant's affidavit, "each taser owned by the Edgefield County Sheriff's Office is equipped with a camera that records when the safety switch is toggled to the fire position, and

4

continues to record until the safety switch is returned to the safe position." ECF 28-2 at 2. Plaintiff claims that the videotapes in their unaltered state would show him in full cooperation with the officers' demands and establish that the officers' use of force was excessive. ECF 1-1 at 33. As a result of the alleged omissions, Plaintiff asserts he was unable to adequately litigate *Barnes I*.[2]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b) (1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *Id.*

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless.*" Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the

---

[2] Initially, Plaintiff claimed that Defendant's failure to produce an unaltered version of the videotapes hindered his ability to put on a defense in his criminal trial. In his declaration in response to Defendant's summary judgment motion, Plaintiff waives those claims. ECF No. 113-1. The claims that remain, denial of access to the courts pursuant to 28 U.S.C. § 1983 and the state law claim of spoliation of evidence, pertain only to his ability to litigate *Barnes I*.

pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . . " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . . " *Id.* Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim.*"* *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. *Id.* Although the court liberally construes pro se complaints, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the court does not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

## I. DISCUSSION

**A.** *Defendant's Motion for Summary Judgment*

Defendant moved for summary judgment on the following grounds: Plaintiff has failed to establish an access to the courts claim that rises to the level of a constitutional violation; Defendant is entitled to qualified immunity; Plaintiff's spoliation claim fails as a matter of law; Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations. ECF No. 28-1. In her Report and Recommendation, the Magistrate Judge recommended granting Defendant's

summary judgment motion, determining that (1) Plaintiff has failed to furnish facts sufficient to establish a denial of access claim and (2) Defendant has qualified immunity because Plaintiff failed to show that Defendant transgressed any statutory or constitutional right. ECF No. 117.

**1.** *Denial of Access Claim*

As an initial matter, the court must address Plaintiff's objections regarding the proper standard of review for evaluating Plaintiff's denial of access claim. Plaintiff argues that the Magistrate Judge erred in treating Defendant's motion as a summary judgment to assess the sufficiency of Plaintiff's evidence, rather than a summary judgment limited to purely legal questions. ECF No. 119 at 3-4. On June 26, 2012, this court affirmed the Magistrate Judge's protective order staying discovery pending resolution of Defendants's motion for summary judgment. ECF No. 115. In affirming the Magistrate Judge's order, this court made clear that summary judgment was proper because Defendant had moved on the basis of qualified immunity and other legal grounds that do not depend on the sufficiency of the evidence. *Id.* Relatedly, Plaintiff's third objection seems to contest the Magistrate Judge's Report and Recommendation on the grounds that summary judgment was premature because Plaintiff has not had an opportunity to engage in even limited discovery. ECF No. 119 at 5. In evaluating Plaintiff's denial of access claim, our consideration is limited to legal questions, including whether Plaintiff's pleading fails as a matter of law.[3]

It is well established that citizens have a right of access to the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). There are two types of lawsuits for denial of access

---

[4] The Magistrate Judge concluded in her recommendation that "plaintiff has failed to furnish facts or evidence sufficient to survive summary judgment." ECF No. 117 at 5. In accordance with the court's June 26, 2012 ruling that Defendant's pre-discovery summary judgment motion must be limited to qualified immunity and other legal questions that do not turn on the sufficiency of the evidence, the court does not concur with the Magistrate Judge's analysis on this issue.

that emerge from the case law. In the first type of lawsuit, a prisoner plaintiff endeavors to demonstrate denial of access by establishing that the failure to provide access to law materials and books, mail, notary services, and so forth deprived him of meaningful access to the courts. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977) ("The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). In the other type of lawsuit, a plaintiff, not necessarily a prisoner, may state a claim by establishing that a public official's actions in covering-up evidence hindered the plaintiff's effort to vindicate a legal right. *See, e.g.*, *Christopher v. Harbury,* 536 U.S. 403 (2002); *Swekel v. River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997); *Foster v. Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994); *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). Plaintiff challenges the Magistrate Judge's Report and Recommendation for failing to consider the case law that defines the second type of lawsuit. ECF No. 119 at 13.

Plaintiff relies on *Harbury* to support the position that the allegations in his complaint make out a denial of access claim. In *Harbury*, the plaintiff alleged that the federal government denied her access to the courts when the government concealed information that her husband was being held captive and tortured by Guatemalan army officers hired by the Central Intelligence Agency. 536 U.S. at 405-06. The plaintiff filed suit after she learned of her husband's execution, alleging among other claims, denial of access to the courts pursuant to 28 U.S.C. § 1983. *Id.* The Court recognized that a cover-up like the one the plaintiff alleged could be the

basis for a denial of access claim but that the plaintiff had not stated a valid claim because she had not alleged an underlying lawsuit that she would have brought were it not for the government deception. *Id.* Furthermore, the Court held that the informal amendment to her complaint, which asserted that she could have sought injunctive relief to prevent the execution, did not correct the deficiency because that relief could not be awarded in the plaintiff's current lawsuit for denial of access. *Id.* Although *Harbury* turned on whether the plaintiff had alleged a valid predicate claim, that is not the issue in this case. Instead, Plaintiff relies on the Court's dicta that the destruction or concealment of material evidence can be the basis for a denial of access claim. *Id.* at 413. That dicta should be read in light of the specific facts before the Court. *Harbury* involved a situation where the government's deception left the plaintiff without any reason to investigate her husband's unique circumstances or know that anything was wrong. Had she reason to seek information about her husband's situation and had the government been forthcoming, she would have discovered grounds to pursue a legal claim that could have saved her husband's life.

Plaintiff also cites a Seventh Circuit case cited by the Court in *Harbury*, *Bell v. Milwaukee*, 746 F.2d 1205, 1215 (7th Cir. 1984). In *Bell*, officers in the Milwaukee Police Department shot and killed a man and afterwards tried to cover-up the incident by planting evidence and falsely recounting what happened in their police reports. *Id.* at 1215. Twenty years later, one of the officers came forward and revealed the truth. *Id.* at 1228. The relatives of the deceased brought a lawsuit asserting, among other claims, denial of access to the courts pursuant to 28 U.S.C. § 1983. *Id.* The court held that the officers' willful and intentional cover-up of the facts that the decedent's relatives would have needed to file a successful lawsuit "rendered hollow" their right to access the courts. *Id.* at 1261.

The court in *Bell* distinguished the facts from those before the Sixth Circuit in *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir. 1997). In *Joyce*, the plaintiff alleged that she was injured in an automobile accident caused by the police chief's son but was prevented from seeking legal redress because of a well-orchestrated cover-up within the police department. *Id.* at 56. In affirming the district court's dismissal, the *Joyce* court rejected the plaintiff's denial of access claim, explaining that the plaintiff was not prevented from filing a damages action during which she could have raised the issue of the defendant's destruction and concealment of material evidence. *Id.* The distinction to observe is that unlike in *Bell*, where the facts surrounding the underlying incident had been concealed, the plaintiff in *Joyce* knew the identity of the defendants and, based on her first-hand knowledge, had all the facts necessary to commence a lawsuit.

In this case, Plaintiff has failed to state a claim for denial of access to the courts. The thrust of Plaintiff's claim is that Defendant's alleged alteration of the videotape footage made it more difficult to litigate *Barnes I*. Plaintiff alleges that the alterations permitted the officers who tased him to testify falsely in their affidavits, which ultimately led to the dismissal of *Barnes I* on summary judgment. ECF 113-1 at 8. The facts of this case are more like those in *Joyce* and less like those in *Harbury* and *Bell*. As in *Joyce*, where the plaintiff had personal knowledge that the police chief's son drove the vehicle that hit her, here, Plaintiff had personal knowledge of the November 3, 2007 tasing incident that gave rise to his lawsuit in *Barnes I*. By contrast, *Harbury* and *Bell* involved government actors who had concealed key facts, thus, preventing the plaintiffs from knowing that they had redressable injuries and from commencing legal actions. Plaintiff does not allege that Defendant kept from him important facts, without which he would could not have brought a lawsuit. Instead, Plaintiff alleges that as early as February 21, 2008, several

months after the November 2007 tasing incident, he viewed the videotape footage and noticed it was altered. ECF No 1-1 at 6. Although Plaintiff alleges that he did not learn until March 12, 2008, that Defendant was the official responsible for maintaining the tasers at the Edgfield County Sheriff's Office, he does not allege that Defendant's identity was actively concealed. ECF No. 51 at 10. In any case, it was unnecessary for Plaintiff to know the identity of Defendant before commencing the lawsuit against the officers who tased him. Indeed, Plaintiff timely filed his complaint in *Barnes I* on January 2, 2008.

Plaintiff's claim for denial of access fails because Plaintiff had a complete opportunity to litigate *Barnes I* in this court, during which Plaintiff could have investigated the integrity of the available videotape footage through discovery. In *Barnes I*, Plaintiff raised the issue of the altered videotapes in opposing the defendants' summary judgement motion. This court determined that Plaintiff's contention was unsupported by the evidence and insufficient to create a genuine issue when compared to the defendants' adequately supported motion for summary judgment. *Barnes v. Dedmondt*, C/A No. 4:08-0002-MBS, 2009 WL 3166576, *2 (D.S.C. Sept. 29, 2009). Unlike the plaintiffs in *Bell* and *Harbury*, Plaintiff has litigated the events in question and had the benefit of discovery in this court. Plaintiff has pleaded no new facts to convince this court that allowing this case to move forward will produce a different version of what happened or uncover official impropriety. Thus, because Plaintiff has not alleged that he was hindered from seeking redress in *Barnes I*, his denial of access claim fails as a matter of law. Defendant's motion for summary judgment is granted on this ground.

**2. *Qualified Immunity***

Defendants contend that they are entitled to qualified immunity. The court agrees.

Qualified immunity protects government officials from liability for violations of constitutional rights that were not clearly established at the time of the challenged conduct. *Guerrero v. Moore*, 442 F. App'x 57, 58 (4th Cir. 2011) (citing *Witt v. W. Va. State Police*, 633 F.3d 272, 275 (4th Cir. 2011)). The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 73 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The defendants may nevertheless be shielded from liability for civil damages if their actions did not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

Because the court discerns no constitutional deprivation, the court's analysis does not move beyond the threshold question. Defendant's motion for summary judgment is granted on this ground.

**3.** *State Law Spoliation Claim*

Defendant argues that Plaintiff's state law claim of spoliation fails as a matter of law. Although it is unclear whether Plaintiff pleads his spoliation claim as an intentional tort or under a negligence theory, South Carolina is yet to recognize either. *Cole Vision Corp. v. Hobbs*, No. 26988, 2011 WL 2447090, *3 (S.C. June 20, 2011); *Austin v. Beaufort County Sheriff's Office*, 659 S.E.2d 122 (S.C. 2008). Therefore, summary judgment is granted as to this issue.

**B.** *Plaintiff's Motion for a Declaratory Judgment*

Plaintiff's motion for a declaratory judgment actually seeks an injunction that would require that Defendant provide Plaintiff with an accurate copy of the videotape footage documenting the events of November 3, 2007. ECF No. 125. Having found that Plaintiff has failed to state a claim against Defendant and that Defendant is entitled to qualified immunity, the court finds no basis on which to order injunctive relief. Accordingly, the court denies Plaintiff's motion for a declaratory judgment.

**C.** *Plaintiff's Motion to Amend*

Plaintiff's motion to amend asks that the court reconsider its January 30, 2012 order that dismissed Plaintiff's claims against his attorney without prejudice. Plaintiff moves pursuant to Rule 60(b) of the FEDERAL RULES OF CIVIL PROCEDURE. The court finds no basis under which it may grant Plaintiff relief from the court's non-prejudicial dismissal of his claims against his attorney. Accordingly, Plaintiff's motion to amend is denied.

## CONCLUSION

After a thorough review of the Report and Recommendation, Plaintiff's objections, the record, and the applicable law, the court adopts the recommendation of the Magistrate Judge. The court grants Defendant's motion for summary judgment and denies Plaintiff's motions to amend and for a declaratory judgment.

**IT IS ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina
September 27, 2012